FILED
2008 May-08 AM 10:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **RICK McCARVER ,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **5:06-cv-2343-UWC** |
| **PPG INDUSTRIES, INC,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| **BRIAN CALDER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **5:07-cv-250-UWC** |
| **PPG INDUSTRIES, INC,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT**

The present actions were initiated by Plaintiffs Rick McCarver and Brian Calder who allege that they were discriminated against based upon their gender when they were terminated by Defendant PPG Industries ("PPG").  *See* 42 U.S.C. § 2000e, *et. seq.*[1]

---

[1] To the extent Plaintiffs seek to assert "Due Process" claims, (*see* Compl. ¶¶ 13, 19, 20), such claims are not cognizable under Title VII and not cognizable as asserted against a non-governmental entity, such as PPG.
     The Court notes that Plaintiffs cite 29 U.S.C. § 215(a)(3) ("Fair Labor Standards Act")

Plaintiffs also assert Alabama state law claims for defamation/slander, breach of contract and outrage.

Presently before the Court is a motion for summary judgment by PPG. (McCarver Doc. 77; Calder Doc. 44.) For the reasons set forth below, the Court finds that PPG is entitled to summary judgment on all claims asserted by Plaintiffs.

## I.  FACTS

PPG operates a plant in Huntsville, Alabama that makes airplane windshields and other transparencies. McCarver was employed by PPG for approximately eight years and Calder for approximately nine years. Both were terminated on the same day, July 14, 2005, after a two week investigation into charges of sexual harassment made by temporary employee Kay Isbister. Both men vehemently deny that they engaged in any inappropriate conduct.

Isbister's job involved bringing materials to certain work areas, including the areas where McCarver and Calder worked. Around July 1, 2005, Human Resources Supervisor Mike Willey learned from supervisor Bill Hoffman that Isbister had expressed unwillingness to deliver materials to the area where McCarver and Calder worked. Later, another employee, Bill Hopper, informed Willey that Isbister had confided to two employees, Renee Williams and Cindy Smith, that she did not want to go to McCarver and Calder's work area because the two men had groped her against her will.

---

and 42 U.S.C. § 12117(a) ("Americans With Disabilities Act"), in their complaint. Because the facts alleged in the complaint do not indicate any potential violations of FLSA or the ADA, said claims will be dismissed with prejudice.

Upon Willey's urging, Williams provided a written statement in which she indicated Isbister told Williams that Calder had "grabbed [Isbister's] butt" and McCarver had "fondled [Isbister's] breasts." After discussing the matter with Human Resources Director John Faulds, Willey asked for a written statement from Smith, the other witness, who recounted Isbister saying she was uncomfortable delivering to the work area because "one employee" had "grabbed her butt" and "another employee" had "fondled her breasts." Willey then met with Isbister, who said Calder approached her from the right side and "grabbed my buttock" and McCarver "approached from my left side and brushed his arm back and forth across both of my breasts." Willey then informed Calder and McCarver that a complaint had been made and suspended them both pending investigation.

After the Plaintiffs were escorted from the building, Faulds and Willey discovered McCarver's toolbox contained photographs of guns and knives owned by McCarver, as well as stickers with sexually explicit phrases [2] and a photograph of a nude woman.[3] (Def.'s Ex. 1, Willey Aff. at Exs. A-C.)

---

[2] The stickers contained phrases such as "One of us is thinking about SEX . . . okay, it's me," "SEX IS NOT THE ANSWER!  Sex is the question. 'Yes' is the answer ," and "sleeps well with others." (Def.'s Ex. 1, Willey Aff. at Ex. B.)

[3] Faulds testified that possession of the nude photograph at work was a violation of the sexual harassment policy. In their brief, Plaintiffs contend that the photograph did not constitute a violation of the policy unless it was "pornographic" or it was shown to others. (Pls.'s Br. at 3.) The Court notes that the policy indicates sexually suggestive materials a the work place (posters, cartoons, calendars, email) might be considered harassment. The policy does not limit "sexually suggestive" material to pornographic materials. (*See* Def.'s Ex. 5, McCarver Dep. at Exs. 4, 6)

Willey then "formally" interviewed Isbister and e-mailed to Faulds the written statements of Isbister, Smith and Williams, as well as his notes from the various interviews.[4]

Faulds decided that he should interview the involved parties. Accordingly, Faulds interviewed Smith and Williams, who reported that Isbister disclosed to them information about the alleged incidents involving McCarver and Calder. Additionally, Williams reported that, after the alleged groping incident, Isbister appeared afraid whenever she was in the same vicinity as the men.

After PPG discovered the gun photos in McCarver's toolbox, Faulds decided against speaking with McCarver in person. Because Faulds wanted to treat both McCarver and Calder the same, Faulds spoke to both men via telephone.

Both men denied touching Isbister and McCarver denied that the stickers and nude photograph belonged to him. He encouraged Faulds to interview persons who had worked with McCarver in the military, but Faulds declined to do so. Calder suggested that Faulds interview Isbister's stepfather, but Faulds declined to do so.[5] Calder also informed Faulds that Isbister became angry with Calder after he informed another male employee that Isbister expressed an interest in the man and the man suddenly stopped

---

[4] Included in those notes was a statement by employee Bruce Lewis, who indicated he had seen a slender female with dark brown hair talking to Calder. Willey testified that Lewis did not identify the person as Isbister and Willey knew of several employees who fit the description provided by Lewis.

[5] According to Calder, Isbister's stepfather (a PPG employee) had thrown her out of the house for various reasons.

speaking to her.

After talking with Plaintiffs, Faulds reached the conclusion that Isbister's account was more believable because her statements were consistent and credible. Additionally, he noted the consistency between her demeanor and her statements, as well as the consistency between her statements and the statements of Smith and Williams. Moreover, Faulds testified that he had no reason to believe Isbister would fabricate such a story.

Faulds subsequently notified the Plant Manager and Aerospace Human Resource Director about the termination decision; neither of the notified individuals vetoed the decision. On July 14, Faulds informed Plaintiffs of the termination decision. However, he offered both men the opportunity to resign. If they agreed to do so, PPG would indicate that the two men were terminated due to a reduction-in-force and both could obtain unemployment benefits. Both men declined the offer, however.

Under PPG's RESOLVE policy, both men were able to challenge the termination decision and obtain another investigation. Dan Hubert, the RESOLVE facilitator questioned McCarver and Calder via telephone, as well as the previously interviewed witnesses. He also questioned approximately eleven other persons, including Bruce Lewis (who had seen a woman fitting Isbister's description talking to McCarver), and several persons suggested by Plaintiffs.

Some of those same persons have testified in the present action that Isbister wore suggestive clothing, was overly flirtatious, sat in a man's lap, engaged in sexual innuendo, walked in between a man's legs, and rubbed her body against a new employee –all during

work hours.

Because McCarver and Calder refused to resign, both were terminated, but the company reported to the unemployment compensation board that they had been released due to a reduction-in-force.

Both men acknowledged in writing receiving a copy of PPG's employment at-will policy and sexual harassment policy which provides, in pertinent part:

> I understand and agree that this Handbook is not to be construed as a contract of employment, express or implied for any specific duration.
>
> . . . .
>
> Harassment based on sex, race, color, creed, religion, national origin, citizenship status, age, disability, veteran status, marital status, sexual orientation, or any other legally protected status is a form of discrimination and is prohibited by Company policy.
>
> PPG prohibits any form of harassment - - verbal, visual, physical or intimidation - against any person. Harassment of any associate - - by management, co-workers, customers, or suppliers - - destroys team work and may affect productivity and will not be tolerated
>
> . . . .
>
> **What is Harassment?**
>
> Definitions are often not clear-cut when dealing with a complex issue such as workplace harassment. The identification of harassment is often based on individual perceptions an can involve subjective interpretations of behavior. . . . A key in identifying inappropriate and harassing workplace behavior often depends on the impact of the behavior on the recipient, not the intent of the sender. . . . It's probably harassment if someone's words or actions:
>
> •    are <u>unwelcome</u> or offensive to you
>
> •    make you feel uncomfortable or threatened

. . . .

**EXAMPLES OF HARASSMENT OR DISRESPECTFUL BEHAVIORS**. . . .

Outlined below are behaviors or actions that could constitute harassment and create a hostile work environment. . . . .

The examples listed below <u>may be considered harassment</u> and in violations of PPG's policy.

*Visual*

- <u>Sexually suggestive materials a the work place</u> (posters, cartoons, calendars, email)

- Pornographic materials

. . . .

*Physical*

- <u>Unwanted physical contact</u> (i.e., brushing up against another person's body, pinching, kissing, hugging, massaging, touching, etc.)

- Intentionally blocking a person's path

. . . .

<u>If the investigation reveals evidence to support the complaint of harassment, the harasser will be disciplined appropriately</u>. Discipline may include termination of employment.

(Def.'s Ex. 5, McCarver Dep. at Exs. 4,6) (emphasis added).

After his termination, McCarver signed a document authorizing PPG to disclose any requested information concerning him, including information of a confidential nature, to the Huntsville Police Department, which was conducting a pre-employment investigation of him. (Def.'s Ex. 2, Faulds Aff. ¶ 24; Faulds Aff.

at Ex. A.)

With respect to Calder, an investigator from the Alabama Department of Public Safety, who was performing a pre-employment check, interviewed Faulds about the circumstances surrounding Calder's termination. According to the inspector's report, Faulds reported Calder had performed satisfactorily at PPG, but had been terminated for sexual harassment after a co-worker accused him of placing his hand on her buttocks. (Pls.' Ex. 10.)

## II. ANALYSIS OF TITLE VII CLAIM

To establish a prima facie case for discharge, Plaintiffs must show that: (1) they are members of a protected class; (2) they suffered an adverse employment action; (3) the employer treated similarly situated employees outside of the protected class more favorably; and (4) they were qualified for their jobs. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842 (11th Cir. 2000) (citations omitted).

While the Plaintiffs in the present action have comparator evidence involving PPG's treatment of female employees who violated the sexual harassment policy, Plaintiff's evidence does not meet the required "similarly situated" test.

> "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether

> the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 (11th Cir.), *opinion modified by* 151 F.3d 1321 (1998) (quoting *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997)). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Id*. (internal quotations and citations omitted). We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges. *See Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir. 1989) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.").

*Maniccia v. Brown*, 171 F.3d 1364, 1368-9 (11th Cir. 1999).

Plaintiffs unconvincingly cite to incidents involving four female PPG employees: Cindy Smith, Heather Moore, Kimberly Chapman, and Kimberly Ducker. Plaintiffs' comparator evidence is lacking for two reasons. First, only one of the alleged incidents involved touching of private body parts. Thus, only one of the alleged incidents involved a comparator. Second, Plaintiffs lack admissible evidence of comparator conduct.

Although he did not witness the incident, McCarver testified that Cindy Smith repeatedly grabbed a male employee's arm, back and shoulder. (Def.'s Ex. 5, McCarver Dep. at 87-91.) PPG investigated the incident and found that Smith touched the male co-worker on his arm.

Smith is not a comparator for two reasons. First, the Smith incident did not involve non-consensual touching of private body parts. Second, McCarver admits

that this incident occurred under the supervision of prior decision makers, rather than Willey and Faulds, who were involved in the termination at issue here. (Def.'s Ex. 5, McCarver Dep. at 88). Comparator evidence fails where different decision makers are involved. *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989).

McCarver also testified that another employee, Heather Moore, was involved in a sexual harassment incident with Phil Simpson. McCarver did not witness the incident and he testified that the details of this alleged incident were kept "quiet." (Def.'s Ex. 5, McCarver Dep. at 96-97.) While all <u>reasonable</u> inferences should be made in favor of the nonmovant, any "inferences based upon speculation and conjecture [are] not reasonable." B*lackston v. Shook and Fletcher Insulation Co..*, 764 1480, 1482 (11th Cir. 1985)

McCarver next testified about another alleged incident, this time involving Kim Chapman who purportedly touched a male employee in the scrotal area and lifted her shirt exposing her breast to the same male employee. (Def.'s Ex. 5, McCarver Dep. at 91-93.) Plaintiffs, however, have no first-hand knowledge of these alleged incidents, no documentary evidence, and no testimony by any individuals with first-hand knowledge. Thus, they lack admissible evidence that this incident occurred, PPG was aware of the incident and PPG treated Chapman

more favorably.⁶

Finally, in their brief, Plaintiffs point to an incident purportedly involving Kimberly Ducker. (Pls.' Ex. 6.) However, PPG's disciplinary report on Ducker indicates that <u>both</u> Ducker and "Cecil" were engaged in behavior with sexual implications, both verbal and physical, which included sexual contact. (*Id.*; *see* Def.'s Ex. 7, Faulds Dep. at Ex. 22, p.2) There is no evidence that this incident involved <u>unwanted</u> physical contact, however.⁷ Therefore, Ducker is not a comparator

Accordingly, Plaintiffs' prima facie case of discrimination fails. Plaintiffs have not come forward with admissible comparator evidence or, where admissible, they lack evidence that the quality of the comparator's conduct was "nearly identical" to the conduct for which Plaintiffs were discharged. *See Maniccia*, 171 F.3d at 1369.

Even if Plaintiffs could establish a prima facie cause of disparate treatment, Plaintiffs have failed to come forward with evidence that PPG acted with discriminatory animus. As evidence of pretext, Plaintiffs first vehemently assert that they did not engage in the conduct they were accused of committing. These

---

⁶ The Court notes that PPG has filed a Motion asking the Court to strike the hearsay testimony of Plaintiffs regarding alleged comparator evidence.

⁷ Because of some overlapping factual details, there is some indication in the record that the incident allegedly involving Kimberly Chapman, who purportedly touched a male in the scrotal area, <u>might</u> actually have been the incident attributed to Kimberly Ducker.

protestations do not carry the day, however.  It is not the role of the Court to "sit as a super-personnel department that re-examines" the defendant's employment decisions.  *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).  A plaintiff's pretext claim will fail where he merely questions the wisdom of the employer's reasons, at least where the reason is one that might motivate a reasonable employer.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997).  Inasmuch as a reasonable employer might have elected to make the same decision PPG made, Plaintiff has not presented evidence of pretext.

Next, Plaintiffs point to evidence that Isbister engaged in sexually suggestive behavior at work.  Even if such were true, a reasonable employer might well believe that Isbister never consented to, or encouraged, these Plaintiffs to simultaneously touch her in private body parts.

Finally, as evidence of pretext, Plaintiffs contend that PPG failed to follow its harassment policy because Willey and Faulds purportedly failed to consider the Plaintiffs' personnel files, character, and lack of history relating to complaints of sexual harassment.  The Court notes that "an employer's deviation from its own standard procedures may serve as evidence of pretext."  *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1229 (11th Cir. 2006).

In the instant case, however, there is no evidence that Willey and Faulds failed to follow the policy.  Faulds testified that he was persuaded by the demeanor

of Isbister, the witnesses who corroborated that Isbister appeared afraid when she had to go near Plaintiffs and the sexually suggestive photographs and nude photos found in McCarver's tool box.  While some persons might disagree with Faulds' decision to credit an accusation made by a temporary employee, with an alleged history of sexually suggestive behavior, rather than credit the denials of two long-time employees who had never been charged with similar conduct, a reasonable person under the circumstances could reach the same decision as did Faulds.  Thus, this Court is obligated to grant PPG's motion for summary judgment.  In doing so, this Court cannot and does not make any findings with respect to whether or not Plaintiffs actually engaged in the alleged conduct for which they were terminated.

### III. ANALYSIS OF STATE LAW CLAIMS

While PPG sought summary judgment of Plaintiff's outrage and breach of contract claims, Plaintiffs failed to address these claims in their responsive brief.  Accordingly, the Court will grant summary judgment on said claims.  *See Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (noting that "a ground not pressed in the district court in opposition to a motion for summary judgment is to be treated by the district court as abandoned") (citation omitted).

The only remaining claim is Plaintiffs' claim for slander/liable related to

disclosure by PPG of the reasons for Plaintiffs' terminations. To establish a prima facie case for slander or liable, Plaintiffs must show that PPG published a <u>false</u> and defamatory statement concerning Plaintiffs to a third party. *Crutcher v. Wendy's of North Alabama, Inc.*, 857 So. 2d 82, 95 (Ala. 2003).

In the present action Plaintiffs are unable to establish that any disclosures by PPG were false. There is evidence that PPG disclosed to third parties the reasons Plaintiffs were terminated. There is nothing untrue about such disclosures, however. Whether or not McCarver and Calder actually engaged in sexual harassment, they were indeed terminated after being accused of violating PPG's sexual harassment policy. Thus, any statements disclosing the reason for the termination decision do not constitute slander/liable. Moreover, McCarver has waived any right to pursue a slander/libel claim because he signed a release authorizing PPG to disclose any requested information concerning him, including information of a confidential nature.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that no genuine issue of material fact exist with respect to all claim asserted by Plaintiffs. Accordingly, by

separate order**,** the Court will grant Defendant's motion for summary judgment.

Done this 8th day of May, 2008.

_____

**U.W. Clemon**

**United States District Judge**